GRANITE COMPUTER LEASING CORP., Plaintiff-Appellant,

v.

The TRAVELERS INDEMNITY COMPANY, Defendant-Appellee.

Cal. No. 122, Docket 84–7387.

United States Court of Appeals, Second Circuit.

Argued Sept. 21, 1984.

Decided Dec. 27, 1984.

---

William J. Allingham, New York City (Sage Gray Todd & Sims, Stuart A. Krause and William B. Korman, New York City, of counsel), for plaintiff-appellant.

James H. Reidy, New York City (Hynes, Diamond & Reidy, P.C., New York City, of counsel), for defendant-appellee.

Before VAN GRAAFEILAND and CARDAMONE, Circuit Judges and MacMAHON, District Judge.*

* Senior Judge of the United States District Court for the Southern District of New York, sitting by

VAN GRAAFEILAND, Circuit Judge:

Granite Computer Leasing Corp. ("Granite") appeals from a summary judgment of the United States District Court for the Southern District of New York (Motley, C.J.). The judgment dismissed Granite's action against The Travelers Indemnity Company ("Travelers") for breach of a surety bond and denied Granite's cross-motion for summary judgment in its favor. See 582 F.Supp. 1279. Because our review of the record satisfies us that neither party was entitled to summary judgment, we vacate the district court's judgment and remand for trial.

Granite is suing as the successor in interest to Community Science Technology, Inc. and Community Science Technology Development Corp. (collectively "Community"). The surety bond in question was issued pursuant to a subcontract dated April 7, 1973, between Community and National Modular Systems Corp. ("National"). Community had entered into a contract with the federal government to install prefabricated modular housing units at certain Air Force bases and had subcontracted with National to produce the units. Travelers' bond required it to indemnify Community against any loss or damage directly arising by reason of National's failure to fully perform this subcontract.

By the middle of 1974, production of the units was significantly behind schedule, due primarily to delays by the Army Corps of Engineers in approving design drawings. As an arguable result of this delay, National found itself in severe financial straits. Although it had claims for relief pending with the Government, National warned Community that, if it did not receive some sort of extraordinary financial assistance, it would discontinue its performance under the contract. On June 21, 1974, one week after the Government rejected one of its claims, National carried out its threat and closed its plant. Upon learning of this, the Government warned Community that, if

designation.

production was not resumed by July 8, it would deem Community in default under the prime contract. Community then sent National a written notice of breach with fifteen days to cure, as provided in the subcontract. It also requested Travelers to provide the financial help that National needed. Travelers refused.

On July 8, Community and National, with the consent of Travelers, entered into an agreement which provided that Community would withdraw its fifteen-day notice and advance National up to $350,000 (later increased to $2,500,000), and National would resume production. The agreement expressly provided, however, that the parties did not waive or relinquish any of their then-existing rights or remedies.

Although the project was completed in 1976, Community continued to press claims against the Government on behalf of itself and its subcontractors. In 1980, the Government agreed to revise the delivery schedule so that all deliveries were deemed timely and to increase the contract price by approximately $2,800,000. Granite now seeks to recover from Travelers the amount of the funds advanced by Community to National for which Community has not been reimbursed out of the Government's award. This claim should not have been summarily dismissed.

The law governing summary judgments is too well settled to require elaboration. Succinctly stated, it authorizes the summary disposition of litigation if, but only if, there are no genuine issues of material fact to be tried. *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244–45 (2d Cir. 1984). Moreover, the existence of such issues is not belied by the fact that both sides have moved for summary judgment. *Home Insurance Co. v. Aetna Casualty & Surety Co.*, 528 F.2d 1388, 1390 (2d Cir. 1976).

We are convinced that there are genuine issues of material fact in the instant case. Among these are (1) whether, in view of all the circumstances including lack of pertinent contractual definition, National's conduct constituted a default; (2) whether Community itself was in default under the subcontract at the time National closed its plant; (3) whether Community was financially able to perform its obligations under the contract; (4) whether the problems with design approval caused a two-year delay in performance; (5) whether any of the fault for the delay can be attributed to Community; (6) whether National's claims for financial relief were directed to Community or merely through Community to the Government; (7) whether there was a delivery schedule or a completion date for National's delivery of modules; (8) whether National was obligated to deliver any modules to Community during the time National's plant was closed down; (9) whether the "disputes" provision of the prime contract, which required continued performance during the resolution of disputes, was incorporated by reference into National's subcontract and precluded National from stopping delivery; and (10) whether Community's notice of breach was adequate under the subcontract and whether its rights thereunder were properly reserved under the new financing agreement.

If the trier of the facts were to resolve the crucial issues in Community's favor, Community might receive a favorable verdict. *See Comey v. United Surety Co.*, 217 N.Y. 268, 111 N.E. 832 (1916); *Knutson v. Metallic Slab Form Co.*, 128 F.2d 408 (5th Cir.1942). We make no prediction in this regard. We hold only that the case should proceed to trial.

We have limited our review to the question whether summary judgment was proper. Because appellate courts ordinarily do not render advisory opinions, *see F & H Investment Co. v. Sackman-Gilliland Corp.*, 728 F.2d 1050, 1055 (8th Cir.1984), *Chicago, St. P., M. & O.R. Co. v. Arnold,* 160 F.2d 1002, 1008 (8th Cir.1947), we have not considered appellant's challenge to the district court's order denying discovery of a report prepared for Travelers. Moreover, although we are given to understand that this report, which was not made part of the record, is available for our *in camera* inspection if we wish it, we think its

**546**

evidentiary status can be better determined after there has been a more comprehensive development of the facts.

The judgment of the district court is vacated, and the matter is remanded to the district court for further proceedings not inconsistent with this opinion.